## APPEAL OF RED WING LINSEED CO.

Docket No. 2862.    Decided November 9, 1926.

Evidence *held* insufficient to show that the Commissioner's determination of the fair market price or value of buildings, machinery and equipment on March 1, 1913, was erroneous.

*Eugene B. Van Veen, Esq.*, and *Oswald D. Luby, Esq.*, for the petitioner.

*John D. Foley, Esq.*, for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits taxes for the year 1918 in the amount of $16,033.74, and is based upon the following allegations:

(1) That the Commissioner erroneously computed a taxable gain derived from the sale of capital assets, a large part of which were acquired prior to March 1, 1913.

(2) That in computing the tax liability for the year 1917 the Commissioner used an incorrect basis for computing the deduction for exhaustion, wear and tear and failed to credit against the deficiency for the year 1918 overassessments for prior years.

At the hearing no testimony or argument was offered respecting the latter issue.

### FINDINGS OF FACT.

In the year 1901 there was organized a corporation known as the Red Wing Linseed Mills Co., which then acquired a site and constructed and equipped a linseed oil mill at Red Wing in the State of Minnesota. The original construction, which was completed in the year 1902, consisted of a three-story brick and stone building, 61½ by 80¼ feet, a three-story brick and stone warehouse, 26⅔ by 44¼ feet, and a one-story brick boiler house, 15 by 23 feet; and in all of these buildings there was installed all the machinery, equipment and facilities necessary for the operation of a thoroughly equipped linseed mill. The company experienced financial difficulties, was declared bankrupt on or about October 1, 1907, and on December 14, 1907, all its property was purchased at a receiver's sale by local bankers for the sum of $41,158, the same being the amount of the accrued indebtedness to the bankers. Thereupon, said bankers caused to be organized the present petitioner corporation, known as the Red Wing Linseed Co. During the years 1908 and 1909, the petitioner constructed additions to the warehouse and built a new 80,000-bushel elevator and a 135,000-gallon tank, installed new plumbing, a new electric lighting system, a 100-ton track scale, and many other items of machinery and equipment.

The land owned by the petitioner on which its mill and other properties are located consists of lots 6, 7, and 8, and part of lot 11, in

Block 41 of the City of Red Wing. The Commissioner and the petitioner have agreed that the March 1, 1913, value of this land, exclusive of improvements, was $7,157.

The crushing of flax seed and the manufacturing operations of the mill produced a vaporized oily substance which settles upon all the machinery and equipment and throughout the buildings used, and forms an oily coating for everything within its reach. This oily coating is a natural protection against oxidation, erosion, and all the elements of decay in respect to both buildings and machinery, and results in a marked slowing down of the processes of exhaustion, wear and tear.

In making his adjustments of taxable income for the period from March 1, 1913, to November 1, 1918, the Commissioner computed annual deductions for exhaustion, wear and tear.

The petitioner's property is situated in the City of Red Wing, Minn., on the banks of the Mississippi River, and is built into a solid sandstone hill, so that its wagon-road approach on the westerly side is on a level with the third floor of the buildings, while on the easterly side its buildings abut upon the right-of-way of the Chicago, Milwaukee & St. Paul Railway Co., and the first floor of its buildings is on a level with such right-of-way, and the railway side trackage extends to and supplies transportation facilities for the shipping uses of the mill and elevator. Red Wing is on the main line of the Chicago, Milwaukee & St. Paul Railway and is a terminal point of a branch of another railway system operating through the farming country to the westward. Agricultural production, of which flax growing was a considerable factor, had been fully developed throughout this territory for many years prior to 1913.

On November 4, 1918, the petitioner sold its entire plant to the Pittsburgh Plate Glass Co. for a net selling price of $100,116.77. It returned no profit from such sale. The Commissioner, in making his computation of income-tax liability for the year 1918, added $12,050.21 as a gain derived from the sale of the property, which amount was arrived at in the following manner:

March 1, 1913, value:

| | | |
|---|---:|---:|
| Buildings | $57,144.17 | |
| Additions | 2,428.06 | |
| Machinery, furniture and fixtures, etc | 40,198.83 | |
| Additions | 2,067.05 | |
| Total | | $101,838.11 |
| Deduct: | | |
| Depreciation—building | 5,938.70 | |
| Machinery, furniture and fixtures, etc | 14,989.85 | |
| | | 20,928.55 |
| | | 80,909.56 |

Add:

Cost of land_____ $7,157.00

Total value as at November 1, 1918_____ 88,066.56
Amount received from sale_____ 100,116.77

Correct gain on sale_____ 12,050.21

OPINION.

SMITH: In its income-tax return for 1918, the petitioner returned no profit from the sale of its plant to the Pittsburgh Plate Glass Co. at a net price of $100,116.77. The Commissioner has added to the net income reported $12,050.21, as a profit upon the sale of this property. The petitioner alleges error on the part of the Commissioner in so doing.

It appears from the deficiency letter from which this appeal is taken that the Commissioner determined that the March 1, 1913, value of the property sold to the Pittsburgh Plate Glass Co. in 1918 was $104,500. In order to show that the March 1, 1913, value of the property was in excess of that amount, the petitioner caused two appraisals to be made, one in May, 1924, which showed a value for the property at March 1, 1913, of $140,325.87, and another made in May, 1925, by an appraiser who spent two days at the plant. His estimate of the value of the property on the basic date, exclusive of small tools, implements, and office furniture and fixtures, was $119,846.29, and inclusive of such assets, $121,504.76. These appraisals showed the reproduction cost new on March 1, 1913, less an estimated amount for depreciation sustained to that date. Neither appraisal company pretended to have any knowledge as to what the plant would have brought if placed on the market for sale. Officials of the companies stated, however, that if a person had wished to build a plant in 1913, the cost of building the plant at that time, less reasonable depreciation from the time that the petitioner's plant had been built to March 1, 1913, would be the amounts above stated.

The basis for determining the profit upon the sale of the property is the cost or fair market price or value of the property on March 1, 1913, whichever is higher. The fair market price or value of property must be determined in the instant case from all of the evidence which has a bearing upon that value. In the absence of a sale of the property at or near the basic date, other relevant factors must be taken into consideration in determining such value. In the instant case, it appears that the plant had not been operating at a profit prior to the time when it was acquired by the petitioner in 1907 at a foreclosure sale for less than $50,000 cash; that it had been operated for only about 40 per cent of the time from 1907 to 1917, and that during the ten-year period operations of the plant did not show a profit.

The only evidence before us as to the March 1, 1913, value of the property in question is the retrospective appraisals made by two appraisal companies in the manner indicated above. We have held in numerous instances that retrospective appraisals upon the cost of reproduction, less an estimate for depreciation, are not of themselves competent evidence to determine the fair market price or value of property. *Appeals of Kinsman Transit Co.*, 1 B. T. A. 552; *Rockford Malleable Iron Works*, 2 B. T. A. 817; *Tibby-Brawner Glass Co.*, 2 B. T. A. 918; *Stokes Milling Co.*, 2 B. T. A. 1284; *Strong, Hewat & Co.*, 3 B. T. A. 1035.

We are of the opinion that the evidence of record does not warrant a finding of fact that the fair market price or value of the property sold in 1918 to the Pittsburgh Plate Glass Co. had a fair market price or value on March 1, 1913, in excess of $104,500, the amount found by the Commissioner.

> *Judgment will be entered for the Commissioner.*

TRUSSELL dissents.